**MERLENE FRETT-SMITH, Plaintiff**

**v.**

**JOEY VANTERPOOL, CHERYL VANTERPOOL, individually and d/b/a VANTERPOOL ENTERPRISES, INC., BUILDERS EMPORIUM, INC., Defendants**

Civil No. 2000-89

District Court of the Virgin Islands

Division of St. Thomas and St. John

August 16, 2006

FRANCIS E. JACKSON, JR., ESQ., St. Croix, U.S.V.I., *For Plaintiff.*

STEPHEN A. BRUSCH, ESQ., St. Thomas, U.S.V.I., *For Defendants.*

GOMEZ, *Chief Judge*

## MEMORANDUM OPINION

(August 16, 2006)

Joey Vanterpool and Cheryl Vanterpool (the "Vanterpools") have moved to vacate the jury's verdict and dismiss the complaint of Merlene Frett-Smith ("Smith") for want of subject matter jurisdiction. For the reasons set forth below, the motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are both long and convoluted. In the interest of brevity, the Court will limit itself to the facts that are pertinent to this motion.

Smith was born in Tortola, British Virgin Islands ("B.V.I."), and spent much of her childhood in St. Thomas, U.S. Virgin Islands. She became a naturalized United States citizen in 1975. After high school, Smith left St. Thomas to attend college in Hampton, Virginia.

In 1981, Smith moved to Miami where she worked for the Florida Department of Health. In 1983, Smith returned to the U.S. Virgin Islands, married Collin Winston Smith ("Winston"), and had a son. The marriage between Smith and Winston ended in 1986, and Smith thereafter moved to Atlanta and then to Miami.

In 1990, Smith moved to St. Thomas and took a job with the Virgin Islands Department of Education. In August, 1998, Smith was injured by a light fixture while working as a teacher at Charlotte Amalie High School. The light fixture was installed by the Vanterpools. Smith allegedly traveled to Florida in December, 1998, for treatment related to her injury. While the record is unclear, it appears that Smith returned to the U.S. Virgin Islands in 1999. In December, 1999, Smith moved back to Tortola, B.V.I., to live with her brother.

Smith filed this suit on May 3, 2000, while residing in Tortola. In her complaint, Smith alleged that she was a citizen and domiciliary of Tortola, B.V.I. Compl. ¶ 1 ("Plaintiff is a citizen and resident of Tortola. ..."). Based on Smith's representation, this matter proceeded to trial in March, 2005. A jury returned a verdict in Smith's favor for $1.2 million and the Court entered judgment on April 18, 2005.

The Vanterpools have filed this post-trial motion alleging that Smith was a United States citizen who was residing in the B.V.I, when the action was commenced and that the Court therefore lacked diversity jurisdiction. In response, Smith asserts for the first time that she was a resident of Florida when the action was commenced and that the Court can properly exercise diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[1]

## II. DISCUSSION

### A. Challenge to Subject Matter Jurisdiction

Lack of subject matter jurisdiction is grounds for dismissal and may be raised by the parties at any time. *In re Kaiser Group Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). When jurisdiction is challenged, it is the plaintiff's burden to establish that jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). Citizenship for the purposes of diversity is determined as of the time the complaint is filed. *See Grand Union Supermarkets of the V.I. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003).

---

[1] Pursuant to 28 U.S.C. § 1332(a):

[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—1) citizens of different States; 2) citizens of a State and citizens or subjects of a foreign state.

## B. Domicile

By its terms, diversity jurisdiction under 28 U.S.C. § 1332(a) is determined by the citizenship of the parties to the action at time of filing. Citizenship for the purpose of establishing diversity jurisdiction is the same as domicile. *See Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir. 1995). Domicile, in turn, is determined by a party's physical presence or residence in a state, combined with an intent to remain there indefinitely. *Id.*

The United States Court of Appeals for the Third Circuit has examined several factors to determine a party's domicile. These factors include establishment of a home, place of employment, location of assets, registration of a car, and generally, the center of one's business, domestic, social and civic life in a jurisdiction. *Id.*; *see also Vlandis v. Kline*, 412 U.S. 441, 454, 93 S. Ct. 2230, 37 L. Ed. 2d 63 (1973) ("In general, the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning."). A party's statements regarding her intention to make a particular place his domicile are to be given fair consideration, but the party's "real attitude and intention ... as disclosed by a party's entire course of conduct are the controlling factors in ascertaining his place of domicile." *Korn v. Korn*, 398 F.2d 689, 691, 6 V.I. 296 (3d Cir. 1968) (citing *Texas v. Florida*, 306 U.S. 398, 425, 59 S. Ct. 563, 83 L. Ed. 817 (1939)). Importantly:

> [o]ne's testimony as to his [or her] intention to establish a domicile, while entitled to a full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is contradicted or negatived by an inconsistent course of conduct; otherwise stated, actions speak louder than words.

*Id.* at 691.

Where a party seeks to establish a change in domicile, there is a presumption in favor of the established domicile unless rebutted by clear and convincing evidence. *Walls v. Ahmed*, 832 F. Supp. 940, 942 n.5 (E.D. Pa. 1993) (noting that the presumption in favor of the former domicile requires the proponent to prove change of citizenship by clear and convincing proof).

Finally, any evidence submitted by a plaintiff must be examined in light of previous admissions that she was a citizen of another jurisdiction. *See Korn*, 398 F.2d at 691 (noting that self-serving claims of residence, or an intention to remain in a particular state, are to be accorded little weight when in conflict with objective facts).

## III. ANALYSIS

Smith contends for the first time in her opposition that she was a citizen of Florida when she filed her complaint in May, 2000.[2] Specifically, Smith argues she that changed her domicile from the U.S. Virgin Islands to Florida in December, 1998, when she traveled to Florida for treatment related to her injury. In the alternative, Smith claims that she never abandoned her Florida domicile in 1990.

In assessing Smith's claim that she was domiciled in Florida when this action was filed, the Court will examine the nature of Smith's several residences to ensure that her claim is not an eleventh hour maneuver to preserve subject matter jurisdiction. *Id.*

### A. Smith's Domicile Before Filing Her Complaint

#### 1. Smith's Domicile in 1990

In 1990, Smith moved from Florida to the U.S. Virgin Islands, established a residence there, and took a job with the Virgin Islands Department of Education. Aff. of Merlene Frett-Smith ¶ 8. Smith also concedes that she filed her taxes in the U.S. Virgin Islands, not in Florida, from 1990 through 2002. Defs.' Reply to Pl.'s Opp. to Def's Mot. to Dismiss ("Defs.' Reply") Ex. A. Finally, Smith admits that she exercised her political rights in the U.S. Virgin Islands by voting in local elections and by petitioning the U.S. Virgin Islands government to pay her salary after the Government Employee Retirement System rejected her disability claim. Defs.' Reply 9.

Against this evidence, Smith attempts to persuade the Court that was she domiciled in Florida in 1990 because she "left a dozen boxes of household furnishing with a co-worker in Broward County ... ."[3] Pl.'s

---

[2] Because the Vanterpools are Virgin Islands citizens, she argues that this Court had jurisdiction under 28 U.S.C. § 1332(a)(1).

[3] Curiously, Smith submitted her Florida driver's license from the early 1980s while explaining that "she was compelled by the Virgin Islands Division of Motor Vehicles to

Supp. Opp. 8-9. The location of some personal belongings cannot overcome the fact that from 1990 to 1998, Smith lived, worked, voted and paid taxes in the U.S. Virgin Islands. Moreover, Smith's plan to move back to Florida does not overcome the facts that indicate that Smith moved to the U.S. Virgin Islands in 1990 with an intention to stay there indefinitely. *See Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 489 (5th Cir. 1992) ("The 'intent' which ultimately controls the analogous determinations of 'residence' and 'domicile' turns primarily on the objective facts, and statements of intent are entitled to little weight when in conflict with facts." (citations omitted)); *see also Gilbert v. David*, 235 U.S. 561, 569, 35 S. Ct. 164, 59 L. Ed. 360 (1914) ("If a person has actually removed to another place, with an intention of remaining there for an indefinite time ... it is to be deemed his place of domicile, notwithstanding that he may entertain a floating intention to return at some future period." (citations omitted)). Accordingly, the Court finds that Smith became a domiciliary of the U.S. Virgin Islands when she moved there in 1990.

### 2. Smith's Domicile in December, 1998

■ Smith next contends that she considered Florida her home and domicile when she went there in December, 1998. As support, Smith has provided a copy of a twenty-eight day lease dated May 13, 1999, which she claims is "clear evidence of Plaintiff's domicile in Florida as of December, 1998." Pl.'s Supp. Opp. 7. Even if the Court considers this unsworn document to be valid, several factors about the lease negate Smith's assertion that she was domiciled in Florida in 1998. First, a short-term lease in May, 1999, cannot establish either that Smith had taken up residence in Florida in December, 1998, or that she intended to remain there indefinitely. Second, the lease calls for Smith to pay a "tourist tax" and a "state surtax," which is inconsistent with Smith's assertion that she was a citizen and resident of Florida. Finally, Smith

---

relinquish it when she obtained a Virgin Islands Driver's license upon her return to St. Thomas in 1990." Pl.'s Supp. Opp. to Defs.' Mot. to Dismiss 9 ("Pl.'s Supp. Opp."). The Court fails to see the value of an unrecognized Florida driver's license. Ironically, her Virgin Islands driver's license is evidence that Smith's domicile changed to the U.S. Virgin Islands when she moved there in 1990. *See United Service Auto. Ass'n. v. Evangelista*, 698 F. Supp. 85, 88 (E.D. Pa. 1988) (holding that plaintiff was domiciled in Pennsylvania in part because he maintained a Pennsylvania driver's license).

never claims that she resided at that location.[4] Without more, the lease does not establish that Smith changed her domicile to Florida in 1998. *See State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (holding that absent evidence that a party has taken up residence elsewhere, it is appropriate to conclude that the domicile has not changed).

Smith also seeks to prove that she took up residence in Florida by providing an application for employment that she allegedly submitted to the state of Florida on August 12, 1998. This application lists Smith's address as 2202 Cedar Trace Circle, Tampa, Florida. The application also states that she left the employ of Charlotte Amalie High School because she relocated to Florida. Pl.'s Supp. Opp., Ex. B. This exhibit lacks a stamp or other indicia of reliability that it was in fact submitted to the state of Florida on August 12, 1998. This application is also troubling to the Court as it contradicts Smith's assertions in her complaint that she was employed at Charlotte Amalie High School and living in St. Thomas in August, 1998. Pl.'s Comp. ¶ 14. ("That on August 18, 1998 ... Merlene Frett-Smith was a teacher working at Charlotte Amalie High School ... .").[5]

■ Smith has provided no evidence that she paid taxes, obtained a driver's license, registered her vehicle, or maintained a bank account in Florida. Smith's only connections to Florida are that she went there for medical treatment in December, 1998, that she applied to graduate school at the University of Florida, and that her son lived there. Each of these contacts indicate a transitory and short-lived association with different

---

[4] Even if Smith did stay there, a short-term lease is insufficient to establish the intent to stay in Florida for an indefinite period of time. *See Korn*, 398 F.2d at 693 (plaintiff's assertion of domicile in the U.S. Virgin Islands was rejected in part, because "he made no attempt to establish a permanent home in the Islands from the time of his arrival. ..."); *see also Kinsley v. Signorelli*, 1993 U.S. Dist. LEXIS 5071, at *11 (S.D.N.Y. Apr. 20, 1993) ("[T]he fact that plaintiffs entered into a short-term lease does not support their assertion that they intend to remain in California for the indefinite future, at least absent any evidence that they have been actively searching for more permanent accommodations.").

[5] Smith has also submitted drug prescription labels to support her argument that her residence was Clearwater, Florida in December, 1998. Even if the Court was to consider this information, at best it shows that Smith had a prescription bottle with her claimed address. Interestingly, the phone number and address listed on the prescription labels submitted by Smith are for an Albertsons pharmacy in Clearwater, Florida, and not for Smith's contact information and telephone number.

cities in Florida. Even so, Smith contends that these connections are sufficient for her to change her domicile to Florida. The Court cannot agree.

Smith points the Court to *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698 (1st Cir. 1978), as support for her contention that she was domiciled in Florida in 1998. That case is distinguishable from the case at bar. In *Hawes*, the United States Court of Appeals for the First Circuit concluded that the plaintiff had made a decision to go to New York for an indefinite period of time because she had rented an apartment (presumably not a twenty-eight day lease), obtained a state driver's license, enrolled a child in school, and obtained employment. *Hawes*, 598 F.2d at 702. Smith can point to no such activities in Florida that would permit the Court to rule that she changed her domicile.

Smith also points to *Blue v. National Fuel Gas Distribution Corporation*, 437 F. Supp. 715 (W.D. Pa. 1977), to support her claim that her intent to return to school at the University of Florida was sufficient to show a change in domicile. Pl.'s Opp. to Defs.' Mot. to Dismiss 10 ("Opposition"). That reliance is misplaced, however, as the plaintiff in that case actually enrolled at, and attended, a college. Smith only applied to the University of Florida. She did not enroll there.

 Finally, Smith points the Court to the Restatement (Second) of Conflict of Laws, which "shows [that] the strongest factor in determining a person's domicile is where her family is." Pl.'s Supp. Opp. 5. Section 12 of the Restatement states:

> [h]ome is the place where a person dwells and which is the center of his domestic, social and civil life.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 12 (1971).

*Comment g to section 12 adds:*

> [t]he fact that a person's family lives with him in a dwelling place is strong evidence that the dwelling place is his home. If, in addition, the person concerned has his clothing, furniture, pictures, books and other personal belongings in the place, the evidence that it is his home is strengthened ... .

*Id.* at cmt. g.

According to Smith, her son's residence in Florida, combined with her household good she shipped to him, establishes Florida as her domicile in 1998. Pl.'s Supp. Opp. 6.

The introductory language of comment g—"The fact that a person's family lives with him in a dwelling ..."—illustrates the section's inapplicability to this case. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 12 cmt. g (1971). Smith does not live with her family; she is divorced and has not lived with her son since 1995. Merlene Frett-Smith Aff. ¶ 11 ("My son returned to Miami, Florida in 1995 to live with his father, my ex-husband, and to attend school there."). The plain language of comment g contemplates a family living together in a dwelling where personal belongings are in that place. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 12 (1971). Smith has not directed this Court to any valid evidence in the record that proves that she maintained, or lived in, a dwelling in Florida with her son, or any family member.[6]

In *Korn v. Korn*, 398 F.2d 689, 6 V.I. 296, the United States Court of Appeals for the Third Circuit stated that:

> [w]here the surrounding facts and circumstances clearly indicate otherwise, an individual cannot establish a domicile in a particular state merely by declaring that he regards this State as his domicile.

*Korn*, 398 F.2d at 691 (citations omitted).

Here, despite Smith's declaration that she changed her domicile to Florida in December, 1998, the facts clearly indicate that Smith was domiciled in the U.S. Virgin Islands in December, 1998.

## B. Smith's Domicile at the Time of Filing

This matter originally proceeded on Smith's claim that she was a citizen and resident of Tortola, B.V.I., when the action was commenced. However, Smith was not an alien for diversity purposes when she filed this action. Rather, she was a naturalized United States citizen who resided in the B.V.I.—a foreign jurisdiction. The United States Court of Appeals for the Third Circuit addressed the jurisdictional implications of

---

[6] If the Court were to accept Smith's logic, a non-custodial parent need only send a couch, or a piece of furniture, to the state where her child resides to be considered a domiciliary of that state. 28 U.S.C. § 1332 clearly does not contemplate such a result.

a citizen domiciled abroad in *Pemberton v. Colonna*, 290 F.2d 220 (3d Cir. 1961), stating:

> a citizen of the United States who is domiciled abroad is not a citizen of the country where he makes his home. To do that he must renounce his United States citizenship and acquire citizenship in the foreign country. We think that section (a)(2) "citizens of a State, and foreign states or citizens or subjects thereof ..." means what it says. The plaintiff, even if no longer a citizen of Pennsylvania, is a citizen of the United States and not a citizen of Mexico under the admitted facts.

*Id.* at 221.

█ Applying this principle, Smith cannot maintain an action in federal court if she was a resident of Tortola when the action was filed. *See Dadzie v. Leslie*, 550 F. Supp. 77, 79 (E.D. Pa. 1982) (noting that the plaintiff fell within an "anomalous gap in the diversity statute which prohibits United States citizens that are domiciled abroad from suing or being sued in federal court based solely on diversity grounds").[7]

## IV. CONCLUSION

█ The facts clearly show that on May 3, 2000, Smith was either a resident of Tortola B.V.I., or a domiciliary of the U.S. Virgin Islands. It is uncontested that the Vanterpools are citizens of the U.S. Virgin Islands. Thus, at the time of filing, the parties to this action were not diverse for purposes of 28 U.S.C. §§ 1332(a)(1) or (a)(2), and this Court lacked jurisdiction to hear the case. Accordingly, the judgment entered following the jury's verdict will be vacated and the action will be dismissed for want of subject matter jurisdiction. A separate order follows.

---

[7] Even assuming, *arguendo,* that Smith is a dual citizen of the B.V.I, and the United States (as Smith claims in her opposition brief without providing any supporting evidence), she still cannot maintain an action in this Court. An individual domiciled abroad with a dual citizenship in the United States and the foreign state of domicile cannot invoke subject matter jurisdiction under § 1332(a). *Brooks v. Girois*, 2003 U.S. Dist. LEXIS 14051, at *1 (E.D. Pa. Aug. 11, 2003).