Merlene FRETT–SMITH, Appellant

v.

Joey VANTERPOOL; Cheryl Vanterpool, individually and d/b/a Vanterpool Enterprises Inc.; Builders Emporium, Inc.

No. 06–4169.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) Dec. 10, 2007.

Filed: Jan. 3, 2008.

Francis E. Jackson, Jr., Charlotte Amalie, St. Thomas USVI, for Appellant.

David J. Cattie, Ogletree, Deakins, Nash, Smoak & Stewart, Stephen A. Brusch, Charlotte Amalie, St. Thomas USVI, for Appellees.

Before: SMITH, NYGAARD, and ROTH, Circuit Judges.

## OPINION

SMITH, Circuit Judge.

Merlene Frett–Smith ("Smith") appeals from the judgment of the District Court of the Virgin Islands granting the post-trial motion to vacate the jury verdict and to dismiss the complaint for lack of subject matter jurisdiction filed by defendants Joey and Cheryl Vanterpool, individually and through Vanterpool Enterprises Inc., and Builder's Emporium, Inc. (hereinafter collectively referred to as the "Vanterpools"). Because the parties were not diverse as required under 28 U.S.C. § 1332,[1]

---

1. Section 1332 reads: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of

we will affirm the judgment of the District Court.

### I. Factual Background and Procedural History

Smith was born in Tortola, British Virgin Islands ("B.V.I."), and spent much of her childhood in St. Thomas, U.S. Virgin Islands ("U.S.V.I."). She became a naturalized United States citizen in 1975.[2] After high school, Smith attended college in Hampton, Virginia, and thereafter moved to Miami. In 1983, Smith returned to the U.S.V.I. where she married and had a son. Her marriage ended in 1986, and Smith moved to Atlanta and then to Miami. In 1990, Smith moved back to the U.S.V.I. where she worked for the Virgin Islands Department of Education as a teacher. On August 18, 1998, a light fixture, installed by the Vanterpools, fell on Smith while she was working at Charlotte Amalie High School in the U.S.V.I. Smith stated in her affidavit that she traveled to Florida in December of 1998 for treatment related to her injuries and it was then that she considered Florida her home, intending to remain there. Smith then returned to the U.S.V.I. in 1999, but may have spent part of the year in Florida. In December of 1999, Smith moved to Tortola, B.V.I., to live with her brother. She filed this lawsuit against the Vanterpools on May 3, 2000, while living in Tortola.

Smith filed suit in the District Court of the Virgin Islands. She asserted that there was alienage jurisdiction under 28 U.S.C. § 1332(a)(2) and alleged that she was a citizen and resident of Tortola, B.V.I., and that the Vanterpools were citizens and residents of the U.S.V.I. The District Court thereby exercised jurisdiction over the action. According to their brief submitted to this Court, the Vanterpools moved prior to trial to preclude Smith's expert economist from testifying. Counsel grounded his objection on the fact that the economist was basing his life expectancy calculations on the U.S. life expectancy chart. The Vanterpools contended that this table could not be used respecting Smith, as she was a citizen of the B.V.I. In response to the motion, Smith stated that she was a citizen of the United States residing in the U.S.V.I. The case proceeded to trial and a jury returned a verdict in Smith's favor in an amount exceeding $1.2 million, and the District Court entered judgment on April 18, 2005.

On the basis of this new information regarding Smith's citizenship, the Vanterpools filed a timely post-trial motion to vacate the jury verdict and dismiss the complaint for lack of subject matter jurisdiction.[3] In their supporting memoran-

---

interest and costs, and is between—(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state...."

**2.** In its Memorandum Opinion, one of the District Court's findings of fact was that "Smith was born in Tortola, British Virgin Islands.... She became a naturalized United States citizen in 1975." 2006 WL 2403333 at *1. The District Court, therefore, appears to find that Smith is a United States citizen. 2006 WL 2403333 at *1. ("[Smith] was a naturalized United States citizen...."). However, it does not seem to find that Smith is a citizen of the B.V.I., but solely that she was born there. 2006 WL 2403333 at *6 n.7.

("Even assuming, *arguendo*, that Smith is a dual citizen of the B.V.I. and the United States....").

**3.** "A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." *Kontrick v. Ryan,* 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (citing *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884) (challenge to a federal court's subject matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question sua sponte)); *Capron v. Van Noorden,* 2 Cranch 126, 127, 2

dum, the Vanterpools argued that because Smith was a United States citizen living abroad in the B.V.I., she was not entitled to utilize § 1332(a)(2), even if she was also a citizen of that foreign nation. In response, Smith contended that even if the Vanterpools' position was correct, the District Court possessed diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because she was a citizen of Florida when she filed the Complaint.[4] *See, e.g., Yancoskie v. Del. River Port Auth.*, 528 F.2d 722, 726 (3d Cir.1975) (acknowledging that an alternate basis for federal jurisdiction may be considered if there is a defect in the initial basis for jurisdiction). The District Court ordered Smith to identify and produce objective facts tending to show that she had established domicile in Florida prior to and up to the time the action was filed. Ultimately, the District Court concluded that these "facts" were insufficient to prove domicile in Florida and found that Smith was either a resident of Tortola, B.V.I., or a domiciliary of the U.S.V.I. at the time the complaint was filed, and granted the Vanterpools' motion.

## II. Standard of Review

We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and our review of a dismissal for lack of subject matter jurisdiction is plenary. *See Gould Elecs., Inc. v. United States*, 220

F.3d 169, 176 (3d Cir.2000). However, "[h]istorical or chronological data which underline a court's determination of diversity jurisdiction are factual in nature, and, on review, are subject to the clearly erroneous rule." *Krasnov v. Dinan*, 465 F.2d 1298, 1299–1300 (3d Cir.1972) (internal citations omitted). Thus, this Court will not disturb the judgment of the District Court unless we are "left with the definite and firm conviction that a mistake has been committed" in the District Court's factfinding: namely, the finding that Smith was not "domiciled" in Florida when she commenced her negligence action. *See Korn v. Korn*, 398 F.2d 689, 691 (3d Cir.1968) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

## III. Merits

The first issue we address on appeal is whether Smith can invoke alienage jurisdiction under 28 U.S.C. § 1332(a)(2) if she in fact possesses dual citizenship.[5] This issue is one of first impression for our Court.

A number of our sister Courts of Appeals have already held that for a dual national citizen, only the American nationality is relevant for purposes of diversity under 28 U.S.C. § 1332. These courts agree that "diversity jurisdiction may be

---

L.Ed. 229 (1804) (judgment loser successfully raised lack of diversity jurisdiction for the first time before the Supreme Court); Fed. R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

4. Diversity is to be determined at the time the complaint is filed. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 414 n. 2 (3d Cir.1999) (citing *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957)).

5. The District Court concluded that if Smith is a dual citizen of the B.V.I. and the United States she cannot maintain her action in federal court. 2006 WL 2403333 at *6 n.7. This Court has an independent obligation to satisfy itself of jurisdiction if it is in doubt. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir.2003). Because our review of a District Court's determination regarding its own subject matter jurisdiction is plenary, *Desi's Pizza, Inc. v. City of Wilkes–Barre*, 321 F.3d 411, 419 (3d Cir.2003), we address this issue even absent clear findings. *See supra* note 2.

properly invoked only when a dual citizen's domicile, and thus his citizenship, is in a state diverse from that of adverse parties." *Coury v. Prot,* 85 F.3d 244, 250 (5th Cir. 1996) (citing *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504 (2d Cir.1991); *Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980); *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707 (9th Cir.1992); *Las Vistas Villas, S.A. v. Petersen,* 778 F.Supp. 1202 (D.C.Fla.1991), *aff'd,* 13 F.3d 409 (11th Cir. 1994)). Thus, an American national, living abroad, cannot sue or be sued in federal court under § 1332(a)(2). The only way that an American national, living abroad, can sue under § 1332 is under § 1332(a)(1) if that national is a citizen, i.e., domiciled, in one of the fifty U.S. states. *Coury,* 85 F.3d at 248.[6] We find the Fifth Circuit's reasoning in *Coury v. Prot* particularly persuasive:

> the dual citizen should not be allowed to invoke alienage jurisdiction because this would give him an advantage not enjoyed by native-born American citizens.... [T]he major purpose of alienage jurisdiction is to promote international relations by assuring other countries that litigation involving their nationals will be treated at the national level, and alienage jurisdiction is intended to allow foreign subjects to avoid real or perceived bias in the state courts—a justification that should not be available to the dual citizen who is an American.

*Id.* at 250 (citing 1 Moore's Federal Practice § 0.75[4]) (internal citations omitted). ■ We agree with the courts that have already decided this issue and hold that for purposes of diversity jurisdiction, only the American nationality of a dual national is recognized. Because Smith is a United States citizen, her initial reliance on alienage jurisdiction was in error. Furthermore, if Smith was domiciled abroad at the time her Complaint was filed, she would not be a citizen of any state and diversity jurisdiction under § 1332(a)(1) would also fail. Only if Smith was domiciled in a particular state of the United States at the time the suit was filed, and that state was diverse from that of the Vanterpools, would subject matter jurisdiction be present.

■ The second issue presented by this appeal, then, is whether the District Court committed clear error when it found that Smith was not a domiciliary of Florida for purposes of invoking diversity jurisdiction under § 1332(a)(1). We accept the ultimate factual determination of the factfinder unless that determination is either "(1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan,* 465 F.2d 1298, 1302 (3d Cir.1972). Our independent review of the record reveals that the District Court's finding that Smith was not a domiciliary of Florida when she commenced her action was not clearly erroneous. Thus, the parties were not diverse for purposes of 28 U.S.C. § 1332(a)(1).

■ Smith argues that she changed her domicile from the U.S.V.I. to Florida in December of 1998 when she traveled to Florida for treatment related to her injury. In the alternative, Smith claims that she never abandoned her Florida domicile in 1990. A party's citizenship for purposes of

---

**6.** The *Coury* Court held that, "for a dual national citizen, only the American citizenship is relevant for purposes of diversity under 28 U.S.C. § 1332. Consequently, diversity jurisdiction may be properly invoked only when a dual citizen's domicile, and thus his citizenship, is in a state diverse from that of adverse parties. Accordingly, the dual citizen should not be allowed to invoke alienage jurisdiction...." *Coury,* 85 F.3d at 250.

subject matter jurisdiction is synonymous with domicile. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). Domicile is an individual's "true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Id.* (citing *Vlandis v. Kline*, 412 U.S. 441, 454, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973)). Therefore, the District Court correctly recognized that domicile is established by a party's physical presence in a state with an intent to remain there indefinitely. *See Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir.1995). It looked to several factors that our Court has enunciated to determine a party's domicile, including establishment of a home, place of employment, location of assets, registration of a car, and generally, the center of one's business, domestic, social and civic life. *Id.*

The District Court found that Smith did abandon her Florida domicile in 1990 when she moved to the U.S.V.I. This finding is supported by the evidence of record indicating that Smith established a residence in the U.S.V.I., obtained employment there, filed V.I. tax returns, and relinquished her Florida driver's license to obtain a U.S.V.I. driver's license. Indeed, by her own admission, Smith confirmed that she did not consider Florida her home until, "in December of 1998, I moved to Miami, Florida and began considering it my home *from that point forward.*" (emphasis added). Thus, we cannot consider clearly erroneous the District Court's finding that Smith "became a domiciliary of the U.S. Virgin Islands when she moved there in 1990." 2006 WL 2403333 at *3.

The District Court also rejected Smith's contention that she abandoned the U.S.V.I. as her domicile when she went to Florida in December of 1998, and established a new domicile in Florida that she maintained at the time she filed her Complaint in 2000. In a sworn affidavit, Smith testified that she traveled to Miami, Florida, in 1998 to establish residence there, that she considered it her home, and that it was her "true intention" to remain there. In *Korn v. Korn* we instructed:

> One's testimony as to his intention to establish a domicile, while entitled to full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is contradicted or negatived by an inconsistent course of conduct; otherwise stated, actions speak louder than words.

*Korn v. Korn*, 398 F.2d 689, 691 (3d Cir. 1968). The District Court heeded this instruction and evaluated Smith's "entire course of conduct." *Id.* at 691 n. 4.

As proof that she changed her domicile, Smith presented the District Court with a short-term lease for May of 1999 (which the District Court noted required her to pay a "tourist tax"), an application for employment that Smith claims she submitted to the state of Florida on August 12, 1998,[7] and a number of affidavits testifying to her intent to remain in Florida. The employment application listed Smith's address as 2202 Cedar Trace Circle, Tampa, Florida—the address where Smith arranged to stay while attending graduate school at the University of Florida. However, Smith never enrolled at the Universi-

---

**7.** The District Court noted that "[t]he application also states that she left the employ of Charlotte Amalie High School because she relocated to Florida.... This exhibit lacks a stamp or other indicia of reliability that it was in fact submitted to the state of Florida on August 12, 1998. This application is also troubling to the Court as it contradicts Smith's assertions in her complaint that she was employed at Charlotte Amalie High School and living in St. Thomas in August, 1998." 2006 WL 2403333 at *4.

ty of Florida. Smith provided an affidavit from residents of the Tampa address asserting that Smith stayed with them at their home in December of 1998. However, the affidavit failed to indicate exactly how long Smith stayed at that location.[8] Further, there are inconsistencies among the affidavits. Smith's affidavit contends that she flew into Miami, Florida,[9] and lived there, near her son. Each of the other affidavits indicates that Smith took up residence in Tampa.

Against this evidence, the District Court correctly noted that Smith provided no proof that she paid taxes, obtained a driver's license, registered her vehicle, or maintained a bank account in Florida. In the instant case, the District Court found that despite Smith's declaration that she changed her domicile to Florida in December 1998, the facts contradicted and negated her self-serving declaration. Indeed, the evidence supports the District Court's finding that Smith's only connections to Florida were that she went there for medical treatment in December of 1998, that she applied to graduate school at the University of Florida, and that her son lived there. Given the evidence presented, we cannot construe the District Court's finding that Smith continued to be "domiciled in the U.S. Virgin Islands in December, 1998" as clearly erroneous. 2006 WL 2403333 at *5.

■ It is uncontested that in December of 1999 Smith moved to Tortola, B.V.I.

While Smith contends that she never had any plans of making Tortola her permanent home, proof of intent to remain permanently is not the test for domicile. See Krasnov, 465 F.2d at 1300–01. Rather, "if the new state is to be one's home for an indefinite period of time, he has acquired a new domicile." Id. In her affidavit, Smith did not indicate that she planned to live in Tortola for a finite amount of time, which suggests that the amount of time she was to spend in Tortola was indefinite. Indeed, she was still in Tortola at the time that she filed her Complaint in 2000 and at the time of her deposition in October 2003.[10] Therefore, we cannot construe as clearly erroneous the District Court's finding that "on May 3, 2000, Smith was either a resident of Tortola B.V.I., or a domiciliary of the U.S. Virgin Islands."

If, on May 3, 2000, Smith was a resident of Tortola B.V.I., she cannot maintain this action. Smith is a United States citizen, and therefore, she may not utilize her foreign nationality while living abroad for the jurisdictional purposes of § 1332(a)(2). Further, if Smith was domiciled in the B.V.I. at the time her Complaint was filed, she would not be a citizen of any state for purposes of diversity jurisdiction under § 1332(a)(1). Smith must be a "citizen," i.e., domiciled in a particular state of the United States, of a different state than that of the Vanterpools in order to confer subject matter jurisdiction on the District

---

8. It would be entirely consistent for Smith to have stayed at that address temporarily while she received medical treatment at the Florida Spine Institute in Clearwater, which is approximately 20 miles away. In fact, Thelma Godwin's affidavit supports this: "[i]n December, 1998, [Smith] moved to Florida and resided at my apartment located at 2202 Clearwater Trace Circle, Tampa, Florida. My family assisted her with transportation and medical care at the Florida Spine Institute and other doctors in the area."

9. Smith's brief in opposition to the Vanterpools' motion to dismiss indicates that she flew into Clearwater, Florida.

10. When asked during deposition where she lived, Smith responded, "I live in Kingston, Tortola." When asked how long she had lived there, Smith indicated that she had lived there since December of 1999.

Court under § 1332. Because it is undisputed that the Vanterpools are citizens of the U.S.V.I. and Smith's claim that she is a domiciliary of a different state fails, we will affirm the District Court's order vacating the judgment and dismissing the complaint for lack of subject matter jurisdiction.