NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3641
_____

RHJ MEDICAL CENTER, INC.,
on its own behalf and on behalf of its patients,
                                        Appellant

v.

CITY OF DUBOIS
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 3-09-cv-00131
District Judge: The Honorable Kim R. Gibson

Argued September 11, 2013
Before: McKEE, *Chief Judge*, SMITH, and SLOVITER, *Circuit Judges*

(Filed: April 24, 2014)

Kevin S. Batik
Leonard J. Marsico
Matthew D. Monsour      [ARGUED]
Brian C. Root
McGuire Woods
625 Liberty Avenue
23rd Floor, Dominion Tower
Pittsburgh, PA  15222
*Counsel for Appellant*

Amiee L. Kumer
Colin J. O'Boyle
Melissa M. Weber
Elliott Greenleaf & Siedzikowski
925 Harvest Drive
Suite 300, Union Meeting Corporate
Center V
Blue Bell, PA  19422

John P. Morgenstern        [ARGUED]
Deasey, Mahoney, Valentini & North
1601 Market Street
Suite 3400
Philadelphia, PA  19103
        *Counsel for Appellee*

————————————

OPINION

————————————


SMITH, *Circuit Judge.*

RHJ Medical Center, Inc. ("RHJ"), on its own behalf and on behalf of its patients, brought this action against the City of DuBois, Pennsylvania (the "City" or "DuBois") pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 793; and the equal protection and due process clauses of the United States Constitution by operation of 42 U.S.C. § 1983. RHJ contends the City unlawfully prevented it from opening and operating a methadone treatment facility within city limits by refusing to issue occupancy and use permits to RHJ, and subsequently by passing a zoning

2

ordinance specifically designed to prevent RHJ from opening at its desired location. Following a six-day bench trial, and with the assistance of extensive post-trial briefing, the District Court issued a lengthy opinion addressing all of RHJ's claims. First, the District Court held that RHJ lacked standing to pursue its claims under the ADA and the Rehabilitation Act. Turning to the constitutional claims, the District Court ruled in favor of RHJ with respect to its equal protection challenge. Despite this favorable decision on the merits, the District Court limited RHJ's damages because it determined that RHJ failed to make a reasonable attempt to mitigate its loss. RHJ timely appealed both aspects of the District Court's decision. For the reasons that follow, we will affirm.

I.

In early 2006, RHJ set about to open a methadone drug treatment facility in the City of DuBois. To that end, RHJ retained a professional real estate broker to assist in finding a space that met its criteria: a standalone building in a nonresidential area with roughly 4,000 square feet. After considering several properties, RHJ ultimately settled on a building located at 994 Beaver Drive in downtown DuBois, within the City's Transitional Zoning District. RHJ then signed a ten-year lease for the Beaver Drive building and began preparations for opening its clinic.

Not everyone was pleased to see a methadone treatment facility in DuBois. Shortly before the clinic was set to open, the City's mayor, John "Herm" Suplizio, was invited to discuss the potential methadone facility during an online radio interview. During the interview, Suplizio stated that "we hear and we read things about these methadone clinics in other areas, and we don't like them." When the host inquired whether he believed opening the clinic would be problematic, Suplizio responded, "Yeah, I would have a problem [with it]." The radio host was even less restrained with his comments, offhandedly referring to RHJ's patients as "garbage" and stating that "just the mention of [the methadone clinic] makes . . . the hair on the back of your neck stand up."

RHJ's contentious relationship with the City only got worse following the radio interview. City officials soon discovered that RHJ's chosen location did not comply with then-existing Section 621 of the Pennsylvania Municipalities Planning Code, which prohibited methadone facilities from operating within 500 feet of a public park unless the local government specifically granted an occupancy permit. *See* 53 P.S. § 10621. The "park" at issue was the Beaver Meadow Walkway, a mile and a half long trail that passes less than fifty feet from the building leased by RHJ. In light of this discovery, City Solicitor Toni Cherry sent a letter to RHJ invoking Section 621 and advising that the clinic could not open without first obtaining a Certificate of Use from the City's zoning authority and

4

approval from the City Council. Further, Cherry warned that her office would take "whatever enforcement action is permitted" should RHJ elect to forge ahead with its plans without satisfying the City's requirements.

After receiving Cherry's letter, RHJ backed off its plans for immediate operation and agreed to seek a Certificate of Use from the City.[1] As required by Section 621, the City Council scheduled a public hearing on RHJ's application. RHJ's representatives opened the hearing by detailing the clinic's qualifications and providing statistics about the economic and social benefits associated with methadone clinics. Following these remarks, DuBois residents and city officials were invited to comment on RHJ's application. Nancy Moore, Chairman of the DuBois Planning Commission, questioned RHJ about its security "[b]ecause drugs were involved." Cherry inquired about the property's proximity to a public park, and then asked whether RHJ had performed studies regarding the facility's potential impact on traffic in the area. DuBois resident, Tina Anand, asked questions about the potential for patients to overdose and expressed concern that the facility would bring violence to the City, particularly since it was located right in the "dead center" of town. Ben Blakely, an attorney from DuBois, noted his

---

[1] To be fair, RHJ was left without much option in this regard. As it turns out, RHJ had actually started seeing patients just a few days before Cherry sent her warning letter. When Cherry became aware RHJ was already seeing patients, the City filed suit in the Court of Common Pleas pursuant to Section 621 seeking to enjoin RHJ from operating its clinic. Shortly after the suit was filed, the Court of Common Pleas issued a preliminary injunction against RHJ. It was in this posture that RHJ agreed to seek a Certificate of Use from the zoning authority.

concern that the clinic would decrease property values and potentially attract crime. In addition to these speakers, other residents and officials asked questions on topics ranging from the availability of parking to the facility's planned hours of operation.

Following the public hearing, the City Council unanimously voted to deny RHJ's application for a Certificate of Use pursuant to Section 621 of the Municipalities Planning Code. Further, the City Council noted a series of specific concerns related to RHJ's application which counseled against deviating from Section 621's mandate, including matters raised at the public hearing such as the fact that RHJ did not have an onsite physician, onsite security personnel, or the ability to transport patients that overdose to the hospital.

The City was mistaken if it thought that its denial of RHJ's application would be the final word on the matter. Less than a month after the City denied RHJ's application under Section 621 of the Municipalities Planning Code, this Court issued a decision in an unrelated case holding that Section 621 was facially discriminatory under the ADA and the Rehabilitation Act. *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 305 (3d Cir. 2007). With Section 621 no longer valid, in October 2007, RHJ approached city officials once again to request a Certificate of Use for the Beaver Drive property. However, predicting that our *New Directions* decision would place its previous denial of

RHJ's application on shaky ground, the City had already begun pursuing new measures to keep RHJ out of downtown DuBois. Councilman Randy Schmidt introduced Council Bill 1813, which, after its passage on November 27, 2007, became City Ordinance 1720. Ordinance 1720, *inter alia*, explicitly prohibited "methadone or drug treatment clinics" from locating in the Transitional Zoning District, and thus, effectively ended RHJ's hopes of operating its clinic on Beaver Drive—at least without seeking redress in court.

After accepting that opening its facility on Beaver Drive was—at least in the near term—a hopeless endeavor, RHJ's representatives once again retained a commercial real estate broker to assist with finding a suitable alternative property. RHJ considered three alternative locations within DuBois's O-1 Office district—the only zoning area where methadone clinics were permitted under Ordinance 1720—but found each of these alternatives unsuitable. In addition, RHJ expanded its search to the nearby Sandy Township, but could not find a landlord open to the idea of leasing space for a methadone treatment clinic.

Although RHJ considered several properties within the O-1 office district, it did not make any effort to consider properties owned by or proximate to the DuBois Regional Medical Center ("DRMC"), and in fact rejected two of the three properties above largely on account of their connection to the hospital. RHJ's representatives asserted that they did not pursue properties owned by DRMC

7

because they believed DRMC did not wish to have any affiliation with RHJ or a methadone clinic. Contradicting RHJ's assumption, Raymond Graeca, then president of DRMC, testified at trial that there would have been no reason for DRMC to refuse to lease space to RHJ. Further, Graeca testified that there was adequate space available for lease on both DRMC's West and East campuses around the time RHJ was conducting its search.

Unable to find a suitable site for relocation, RHJ terminated its lease and abandoned its efforts to open a methadone clinic in July 2008, approximately eight months after Ordinance 1720 was passed. In May 2009, RHJ filed the instant action pursuant to the ADA, the Rehabilitation Act, and the equal protection and due process clauses of the United States Constitution. After a six day bench trial, the District Court issued an opinion finding that RHJ lacked standing to pursue its ADA and Rehabilitation Act claims because it failed to prove that its patients were "disabled" within the meaning of the statutes. The Court, however, agreed with RHJ that Ordinance 1720 violated the Equal Protection Clause. But despite finding Ordinance 1720 unconstitutional, the District Court limited RHJ's recovery after determining that RHJ failed to mitigate its loss by not pursuing alternative locations available through DRMC. RHJ timely appealed.

## II.

RHJ's first argument is that the District Court erred in holding that it lacks

standing to pursue its ADA and Rehabilitation Act claims.[2] "We exercise plenary review of standing issues, but review the factual elements underlying the District Court's determination of standing on a clear error standard." *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 238 n.4 (3d Cir. 2010) (quoting *Goode v. City of Philadelphia*, 559 F.3d 311, 316 (3d Cir. 2008)).

It is now well established that "the proprietors of a proposed methadone treatment facility have standing to seek relief both on their own behalf and on behalf of their clients under both the ADA and Rehabilitation Act." *New Directions*, 490 F.3d at 300 (citing *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 405–08 (3d Cir. 2005)). As we have explained, the protections afforded by Title II of the ADA extend to "*any person* alleging discrimination on the basis of disability." *Addiction Specialists*, 411 F.3d at 406 (citing 42 U.S.C. § 12133) (emphasis added). And this protection is unquestionably afforded to methadone clinics, as "any person" has long been interpreted to include "individuals as well as entities." *Id.*; *see also* 1 U.S.C. § 1 (defining "person" to include various entities).

---

[2] As this Court has previously explained, we analyze the provisions of the ADA and Rehabilitation Act together in light of Congress' directive "that the two acts' judicial and agency standards be harmonized." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 302 (3d Cir. 2007) (citation omitted) (noting that the ADA simply expands the Rehabilitation Act's prohibitions against discrimination into the private sector); *see also* 42 U.S.C. § 12201(a) (stating that the ADA is not to be "construed to apply a lesser standard than the standards applied under . . . . the Rehabilitation Act" or the regulations issued pursuant thereto).

An entity, however, cannot be "disabled" within the meaning of the ADA. Accordingly, the regulations clarify that an entity is entitled to bring suit pursuant to the ADA only if it can establish discrimination based on its association with disabled persons. 28 C.F.R. § 35.130(g) ("A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."). Thus, for an entity like RHJ to succeed on its claims, it must establish an association with an individual who is "disabled" as that term is defined in the statute.

To establish that an individual has a disability within the meaning of the ADA or Rehabilitation Act, a plaintiff must show one of the following: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [that the individual was] regarded as having such an impairment." 42 U.S.C. § 12102(1). For our limited purposes, we assume that drug abuse may constitute an impairment. *See Bragdon v. Abbott*, 524 U.S. 624, 632–33 (1998) (explaining that commentary accompanying the regulations lists drug addiction among the list of disorders which may constitute a "physical or mental impairment"). The question, then, is whether that impairment "substantially limits one or more major life activities." 42 U.S.C. § 12102(1).

The District Court held that RHJ failed to prove that its unidentified patients met any of these three standards. With respect to the first two—the actual and recorded impairment tests—the District Court found that RHJ did not produce any evidence identifying patients that were substantially limited with respect to a major life activity. Indeed, there was no such evidence as RHJ failed to identify any prospective patients. The District Court likewise rejected RHJ's argument under the "regarded as" prong, finding that "there is no evidence in the record whatsoever as to whether any city officials or residents had any notions concerning the effect of drug addiction on RHJ's patients' lives."

On appeal, RHJ challenges only the District Court's holding with respect to the "regarded as" inquiry.[3] Under the "regarded as" test, RHJ must show that the City regarded the clinic's potential patients as suffering under an impairment that "substantially limits one or more major life activit[y]." 42 U.S.C. § 12102(1). Unlike the actual and recorded disability tests, the regarded as inquiry "focuses not on [the plaintiff] and his actual disabilities, but rather on the reactions and perceptions of" the discriminating body. *Buskirk v. Apollo Metals*, 307 F.3d 160, 167 (3d Cir. 2002) (citation omitted) (alteration in original). The Supreme Court

---

[3] Although the District Court rejected RHJ's ADA and Rehabilitation Act claims on standing grounds, the "regarded as" analysis is the same whether treated as a standing issue or as an element of the substantive claims. Because RHJ must establish that the City "regarded" its patients as disabled within the meaning of the ADA to succeed on its claims, we analyze this issue without addressing whether it is one of standing or of merit.

has explained that there are two ways to establish the "regarded as" standard—by proving that "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *see also* 28 C.F.R. § 35.104(4). "In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* Applying this test, the District Court found that RHJ did not produce sufficient evidence to show that the City "regarded" RHJ's patients as substantially limited in a major life activity.

In challenging the District Court's finding, RHJ refers to the various comments made by city officials and Dubois residents at the public hearing, as well as the remarks made during Mayor Suplizio's radio interview. After considering these statements, the District Court noted that although the record indicates that "some may have been prejudiced against [RHJ], given its association with recovering drug addicts," "in light of the plain language provided by the ADA's implementing regulation, this is not sufficient on its own to satisfy the 'regarded as' definition of disability." We agree with the District Court that these

12

comments simply do not indicate that the City perceived that RHJ's patients suffered from a disability as defined by the ADA. For example, neither the radio host's comment referring to drug addicts as "garbage" nor the Mayor's declaration that "we don't like [methadone clinics]" suggest a belief on the part of the City that drug addicts are substantially limited with respect to a major life activity. What they suggest is animus against the clinic and its patients. But animus is simply not enough to satisfy the "regarded as" test.

RHJ argues that comments made at the public hearing, such as ones expressing concern about patients overdosing, are proof that the City perceived RHJ's patients as unable to "care for themselves"—a major life activity under the statute. 42 U.S.C. § 12102(2) (listing "caring for oneself" as a major life activity along with other activities like seeing, hearing, eating, walking, speaking, and breathing). We disagree. None of the comments identified by RHJ directly reveal a belief by the speaker that drug addicts are unable to care for themselves. And the drawing of an inference that the speakers perceived RHJ's patients as incapable of taking care of themselves is simply a bridge too far. The District Court, as the factfinder in this case, failed to draw such an inference, and we decline to question the correctness of that decision from the vantage point of appellate review.

RHJ also argues that comments suggesting that the City believed that the clinic would increase violence and crime in the area suggest that the City viewed

RHJ's patients as limited with respect to a major life activity of "productive social functioning." We disagree. As the Fourth Circuit explained in a similar case: "That the Clinic's clients were regarded as criminals and undesirables . . . does not mean that they were necessarily regarded as significantly impaired in their ability to work, learn, care for themselves, or interact with others." *A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 367–68 (4th Cir. 2008). The Fourth Circuit went on to note that "a jury [or factfinder] could permissibly draw these inferences, but it need not do so." Once again, the District Court—acting as factfinder—was unwilling to interpret the comments as showing that the City perceived the clinic's patients as disabled within the meaning of the ADA. This was not error.

The District Court was not persuaded that RHJ demonstrated that the City "regarded" the clinic's potential patients as substantially limited with regard to a major life activity. Based on the record before us, we will affirm the District Court's rejection of RHJ's ADA and Rehabilitation Act claims.

III.

Although rejecting RHJ's claims under the ADA and Rehabilitation Act, the District Court ruled in RHJ's favor with respect to its argument that Ordinance 1720 violated the Equal Protection Clause of the United States Constitution.[4] Nonetheless, the District Court significantly limited RHJ's damages based on its

---

[4] Neither party challenges the District Court's constitutional analysis on appeal.

14

conclusion that RHJ failed to mitigate its loss by not contacting DRMC when looking for an alternative location. On appeal, RHJ contends that this finding was in error.

"The District Court's determination that [a plaintiff] did not adequately mitigate losses and that reasonable efforts would have reduced their damages are findings of fact reviewed for clear error." *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 257 (3d Cir. 2008) (citations omitted). "This is a highly deferential standard of review. Factual findings are clearly erroneous only where the appellate court is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* at 257–58 (quoting *Frett-Smith v. Vanterpool*, 511 F.3d 396, 399 (3d Cir. 2008)). "It is not enough that we would have reached a different conclusion [than] the trier of fact as long as the district court's factual findings are 'plausible' when viewed in light of the entirety of the record." *Id.* at 258 (quoting *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 285 (3d Cir. 2005)).

Failure to mitigate is an affirmative defense and the burden of proof is on the party asserting it. *Prusky*, 532 F.3d at 258 (citing *Koppers Co. Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1448 (3d Cir. 1996)). To prove a failure to mitigate, a defendant must show "(1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Id.* at 258–59. Thus, at its core,

mitigation *vel non* is a question of reasonableness. *Eazor Express, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousmen and Helpers of Am.*, 520 F.2d 951, 969 (3d Cir. 1975) (stating that whether a plaintiff's duty to mitigate has been discharged "depends on the reasonableness of its conduct"). Reasonable conduct "is to be determined from all the facts and circumstances of each case, and must be judged in the light of one viewing the situation at the time the problem was presented." *Toyota Indus. Trucks U.S.A., Inc. v. Citizens Nat'l Bk. of Evans City*, 611 F.2d 465, 471 (3d Cir. 1979) (citation omitted).

RHJ's primary argument on appeal is that the District Court ignored its reasonable mitigation efforts and instead focused exclusively on one additional action the City contends RHJ could have pursued: seeking to rent space from DRMC. We do not read the District Court's opinion in such a manner. Instead, we interpret the District Court's opinion as concluding that in a small town like DuBois—which has only about 8,000 residents and covers just three-and-a-half square miles—it was unreasonable for RHJ to fail to contact the regional medical center to inquire whether it had space available for lease that was suitable for RHJ's purposes. The District Court, after reviewing the evidence presented at trial, concluded that DRMC had space available and would have leased to RHJ if called upon. The District Court thus found that RHJ's failure to contact DRMC—due to an unfounded belief that DRMC would not be cooperative—effectively rendered

16

RHJ's mitigation efforts, as a whole, unreasonable.

The District Court was undoubtedly aware of the various efforts RHJ undertook to find a suitable alternative location. Indeed, it discussed those efforts in some detail in its findings of fact, and further alluded to them when setting out RHJ's position on the mitigation issue. Nonetheless, it concluded that RHJ's efforts were not sufficient in their entirety to constitute a reasonable mitigation effort. Given the "highly deferential" nature of our review, *Prusky*, 532 F.3d at 257, we find no basis to overturn the District Court's conclusion.[5] Accordingly, we will affirm.

---

[5] Chief Judge McKee would not reach the issue of mitigation because he believes that, absent the kind of abuse that is not evident on this record, a party should not be required to mitigate damages that result from the operation of an unconstitutional statute. He believes this is particularly where, as here, it can be argued that mitigation would require the same conduct and impose the same burden as the unconstitutional statute.