NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2023
_____

UNITED STATES OF AMERICA

v.

TERRY L. SEMPF,
                              Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
W.D. Pa. No. 2-12-cr-00123-001
District Judge: The Honorable David S. Cercone

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 19, 2016

Before: SMITH, HARDIMAN, and SHWARTZ, *Circuit Judges*

(Filed: May 20, 2016)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SMITH, *Circuit Judge.*

Terry Sempf, a former letter carrier with the United States Postal Service, was found guilty of conspiracy to transport stolen property, in violation of 18 U.S.C. § 371, and of interstate transportation of stolen property, in violation of 18 U.S.C § 2314. He now appeals his convictions and claims that there were three errors below. First, he argues that the District Court erred in denying his motion to suppress the recordings of several conversations between him and the Government's cooperating informant. Second, he asserts that it was error for the District Court not to instruct the jury on the specific list of overt acts mentioned in the indictment. Third, he claims that the District Court should not have given the jury a willful blindness instruction as there was no evidence to support it. After considering all three of Sempf's claims, we hold that none have merit and therefore will affirm his judgment and sentence.

## I.

Sempf, in addition to working as a letter carrier, sold products at a flea market in Rogers, Ohio for several years. This side job led to trouble when Sempf started selling stolen goods that he obtained from several individuals at deep

discounts.[1]  One such individual was Tracey Orrico.  Orrico was at the time addicted to crack cocaine and shoplifted to support her drug addiction.  After stealing certain retail products, Orrico would contact Sempf and set up a time to meet and sell him the products.  As time passed, Sempf and Orrico began to work together more closely.  Sempf even helped Orrico buy a car to facilitate her shoplifting, making payments on Orrico's behalf directly to the car dealership.

Orrico was eventually caught shoplifting and agreed to cooperate with law enforcement, claiming that she worked with Sempf and that he told her what to steal.  To investigate this story, the police, in cooperation with the FBI, set up several sting transactions in which they arranged for Orrico to meet with and sell approximately $5,000 worth of goods to Sempf.  The Government then bought several of these items back from Sempf's flea market booth on two separate occasions.  In addition to the undercover sales, law enforcement officers, with Orrico's consent, recorded several telephone calls and in-person conversations between Sempf and Orrico.

After gathering this evidence, the police executed a search warrant on

---

[1] Because the facts are reviewed here to determine whether the District Court properly denied Sempf's motion to suppress, we construe the record in the light most favorable to the Government. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

Sempf's home. This led to the recovery and removal of more products from the sting operation as well as additional stolen property, some of which still had security tags attached.

## II.

Sempf first challenges the District Court's determination that Orrico voluntarily consented to the telephone and in-person recordings of her conversations with Sempf. As we noted in *United States v. Antoon*, federal law requires the consent of at least one party to the conversation before it can be electronically recorded. 933 F.2d 200, 203 (3d Cir. 1991). Consent, as we said in *Antoon*, "is a question of fact determined from the totality of the circumstances." *Id.* Thus, "[t]he ultimate test of voluntariness is whether, under the circumstances, the consent was an exercise of free will or whether the actor's free will 'has been overborne and his capacity for self-determination critically impaired.'" *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). We further clarified that "[c]onsent to a wiretap is not voluntary where it is coerced, either by explicit or implicit means or by implied threat or covert force." *Id.* at 203-04 (internal quotation marks and citations omitted). That said, we also held in *Antoon* that our review of the District Court's determination is for clear error. *Id.* at 204. Thus, the District Court's finding that consent was voluntary will not be overturned unless it is "(1) completely devoid of minimum evidentiary support displaying

4

some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400 (3d Cir. 2008) (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972)).

On the record before us, we cannot conclude that the District Court committed clear error. Orrico signed a written consent form stating that her consent was voluntary, and she verbally consented before each recording. While Orrico was motivated by a desire to avoid going to jail, her own self-interest does not undermine the voluntariness of her consent. "An individual's decision to allow the police to record a phone conversation . . . is not necessarily involuntary just because that individual's motives were self-seeking, or because [s]he harbored expectations of personal benefit." *United States v. Kelly*, 708 F.2d 121, 125 (3d Cir. 1983). The circumstances surrounding Orrico's consent also do not suggest that she was coerced into consenting. She was not in custody at the time the forms were signed and she was not asked to consent to the recordings until approximately two months after her arrest. Orrico also did not express any hesitation when agreeing to the recordings. All this suggests the recordings were conducted after proper consent was obtained.

## III.

Sempf next claims that it was plain error for the District Court not to tell the jury which specific overt acts were listed in the indictment. While Sempf admits

5

that the District Court did properly instruct the jurors that they must unanimously agree on a particular overt act, he claims that the District Court "failed to enumerate the overt acts as set forth in the indictment," and "[a]s such, the jury could not possibly have unanimously agreed on the same overt act, as they were never told what the overt acts alleged in the indictment were." However, as we stated in *United States v. Schurr*, 794 F.2d 903, 907 n.4 (3d Cir. 1986), "[i]t is well settled that the government can prove overt acts not listed in the indictment." Thus, because the jury was told that it had to unanimously agree on the commission of at least one overt act, there was no plain error. *See United States v. Adamo*, 534 F.2d 31, 38 (3d Cir. 1976) ("There is general agreement that the Government is not limited in its proof at trial to those overt acts alleged in the indictment.").

## IV.

Finally, Sempf argues that it was error for the District Court to give a willful blindness instruction, as the Government's theory throughout the trial was that Sempf had actual knowledge and intentionally directed Orrico and other suppliers to steal certain products. Sempf claims, therefore, that "[t]here was no room in this case for a willful blindness instruction in that a willful blindness theory was completely inconsistent with the factual theory presented from opening to closing by the government." This same argument was rejected in *United States v. Wert-*

6

*Ruiz*, 228 F.3d 250, 255-56 (3d Cir. 2000). There, the defendant argued that the government only adduced evidence of her actual knowledge of the conspiracy, and that the willful blindness instruction was inconsistent with the government's theory of the case. *Id.* We disagreed, explaining that even if evidence was introduced only to support the claim the defendant had actual knowledge of the illegal conspiracy, we were also "mindful that the jury was entitled to decide that only part of the government's evidence was credible." *Id.* at 256. Accordingly, we held that introducing evidence suggesting actual knowledge was not "inconsistent with the conduct of an individual who willfully blinded herself from the source of the funds with which she dealt and the nature of those activities." *Id.*

The same is true here. While the Government's theory was that Sempf knew what Orrico was doing and thus that the products were stolen, this is not inconsistent with a theory of willful blindness, as the jury was entitled to disbelieve any portion of the Government's case. Thus, for example, the jury could have concluded that Sempf deliberately avoided learning the truth about how Orrico was obtaining the products at such a deep discount. Indeed, Sempf claimed that he believed Orrico had obtained the products as a result of extreme couponing. To conclude that the Government's evidence could support only "actual knowledge that the merchandise was stolen or . . . no knowledge at all" would ignore the fact that the jury is free to reassess the evidence and make its own credibility

determinations.

## V.

For the reasons stated above, we will affirm the judgment and sentence imposed by the District Court.