

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-2008

# Swiger v. Alghny Energy Inc

Precedential or Non-Precedential: Precedential

Docket No. 07-1706

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Swiger v. Alghny Energy Inc" (2008). *2008 Decisions.* Paper 572.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/572

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 07-1706
_____

CLIFTON G. SWIGER

<u>Appellants</u>

v.

ALLEGHENY ENERGY, INC.,
ALLEGHENY ENERGY SUPPLY CO., LLC,
ALLEGHENY ENERGY SERVICES CORP., and
MORGAN, LEWIS & BOCKIUS, LLP

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-CV-5725)
District Judge: The Honorable J. Curtis Joyner

_____

Argued March 25, 2008

BEFORE:  MCKEE, RENDELL and TASHIMA[*],
Circuit Judges,

(Filed: August 25, 2008)

Gregory A. Beck (Argued)
Paul Alan Levy
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
*Counsel for Appellants*

Theresa J. Chung (Argued)
Michael J. Ossip, Esq.
Michael A. Bloom, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Sara A. Begley, Esq.
Robert A. Nicholas, Esq.
Tracey G. Weiss, Esq.
Reed Smith 1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103-7301
*Counsel for Appellees*

---

[*]     The Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

---

## OPINION

---

TASHIMA, Circuit Judge:

We must decide whether a federal district court has diversity jurisdiction over a lawsuit involving a partnership where one of its partners is a dual American-British citizen domiciled in a foreign state. The district court held that it lacked diversity jurisdiction over such an entity, and we affirm.

## I. APPELLATE JURISDICTION & STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291 over a dismissal for lack of subject matter jurisdiction, and our review for lack of subject matter jurisdiction is plenary. *See Frett-Smith v. Vanterpool*, 511 F.3d 396, 399 (3d Cir. 2008).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Clifton G. Swiger sued Allegheny Energy, Inc.,

3

Allegheny Energy Supply Co., LLC, Allegheny Energy Services Corp., and Morgan, Lewis & Bockius LLP ("Morgan Lewis"), (collectively "Defendants"), on several state law claims, including abuse of process, wrongful use of civil proceedings, invasion of privacy, and wrongful discharge, in the Eastern District of Pennsylvania based upon diversity jurisdiction.

Morgan Lewis, joined by the other Defendants, moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground that complete diversity between the parties was lacking. Morgan Lewis is a partnership that, at the time of the filing of the lawsuit, had among its partners, Charles Lubar, a dual United States and United Kingdom citizen domiciled in the United Kingdom. The district court dismissed the case for lack of jurisdiction, concluding that "[g]iven that for diversity purposes, the court must consult the citizenship of *all* of the members of an artificial entity such as

4

a general or limited partnership and because a United States citizen who is not domiciled in one of the United States cannot invoke diversity jurisdiction in one particular state, we must conclude that we are without jurisdiction to act in this matter." *Swiger v. Allegheny Energy, Inc.*, No. 05-CV-5725, 2007 WL 442383, at *5 (E.D. Pa. Feb. 7, 2007) (emphasis in the original) (citations omitted). Swiger timely appealed.

## III. ANALYSIS

Swiger argues that the district court erred in holding that it lacked diversity jurisdiction because, according to Swiger, a single partner who is not a citizen of a state does not render the entire partnership stateless for diversity purposes.[1] Whether a federal district court has diversity jurisdiction over a lawsuit

---

[1] Swiger "assumes" that Lubar is in fact stateless, thus accepting the factual basis of the district court's ruling, that Lubar is an American-British dual citizen domiciled in the United Kingdom.

5

involving a partnership that has among its partners an American citizen domiciled in a foreign state is an issue of first impression in this Circuit. To our knowledge, however, all courts that have addressed this issue have held that such an entity does not qualify for diversity jurisdiction. For the reasons set forth below, we agree with those other courts and hold that if a partner of a partnership is a United States citizen permanently living abroad, there can be no diversity of jurisdiction over the partnership because the partner is neither a citizen of a state nor a citizen of a foreign country.

Swiger also argues that even if the stateless partner destroys diversity, the district court nevertheless had alienage jurisdiction because Lubar, as a dual citizen of the United States and the United Kingdom, is a citizen or subject of a foreign state. This argument, however, is foreclosed by our recent decision in *Frett-Smith*, 511 F.3d at 400, in which we held that,

6

for purposes of diversity jurisdiction, we consider only the American citizenship of a dual American-foreign national. We consider each of Swiger's arguments in turn.

A. *Diversity Jurisdiction and the "Stateless" Partner*

Under 28 U.S.C. § 1332(a):

> district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

A natural person is deemed to be a citizen of the state where she is domiciled. *See Gilbert v. David*, 235 U.S. 561, 569 (1915). A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c).

7

Partnerships and other unincorporated associations, however, unlike corporations, are not considered "citizens" as that term is used in the diversity statute. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187–92 (1990) (holding that a limited partnership is not a citizen under the jurisdictional statute); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 n.1 (2006) ("[F]or diversity purposes, a partnership entity, unlike a corporation, does not rank as a citizen[.]"); *United Steelworkers of Am. v. Bouligny*, 382 U.S. 145, 149–50 (1965) (holding that a labor union is not a citizen for purposes of the jurisdictional statute); *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 454–55 (1900) (holding that a limited partnership association, even though it was called a quasi-corporation and declared to be a citizen of the state under the applicable state law, is not a citizen of that state within the meaning of the jurisdictional statute); *Chapman v. Barney*, 129 U.S. 677, 682 (1889) (holding

8

that although the plaintiff-stock company was endowed by New York law with the capacity to sue, it could not be considered a "citizen" for diversity purposes); 15 James Wm. Moore, *Moore's Federal Practice* § 102.57[1] (3d ed. 2006) [hereinafter *Moore's Federal Practice*] ("[A] partnership is not a 'citizen' of any state within the meaning of the statutes regulating jurisdiction[.]").

Given that partnerships are not citizens for diversity purposes, the Supreme Court has long applied the rule of *Chapman v. Barney*: that courts are to look to the citizenship of all the partners (or members of other unincorporated associations) to determine whether the federal district court has diversity jurisdiction. *See Lincoln Prop. Co.*, 546 U.S. at 84 n.1; *Carden*, 494 U.S. at 196–97; *Bouligny*, 382 U.S. at 151; *Great S. Fire Proof Hotel*, 177 U.S. at 456; *Chapman*, 129 U.S. at 682; *see also* 13B Charles Alan Wright et al., *Federal Practice &*

9

*Procedure* § 3630 (2d ed. 1984) ("[W]henever a partnership, a limited partnership . . . , a joint venture, a joint stock company, a labor union, a religious or charitable organization, a governing board of an unincorporated institution, or a similar association brings suit or is sued in a federal court, the actual citizenship of each of its members must be considered in determining whether diversity jurisdiction exists."). In *Chapman*, the Supreme Court, on its own motion, reversed a judgment on the grounds that the federal court did not have jurisdiction over a stock company because the record did not demonstrate that all the partners of the stock company were citizens of a state different than that of the defendant:

> On looking into the record, we find no satisfactory showing as to the citizenship of the plaintiff. The allegation of the amended petition is that the United States Express Company is a joint-stock company organized under a law of the state of New York, and is a citizen of that state. *But the express company cannot be a citizen of New York, within the meaning of the statutes*

10

*regulating jurisdiction, unless it be a corporation.*
[T]he company . . . is, a mere partnership. . . .

. . . . The company may been organized under the laws of the State of New York, and may be doing business in that State, and yet all the members of it may not be citizens of that State. The record does not show the citizenship of Barney, or of any of the members of the company.

129 U.S. at 682 (emphasis added). In a nearly unbroken chain,[2]

_____

[2] As the Supreme Court put it in *Carden*:
The one exception to the admirable consistency of our jurisprudence [regarding the *Chapman* rule] is *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933), which held that the entity known as a soceidad en comandita, created under the civil law of Puerto Rico, could be treated as a citizen of Puerto Rico for purposes of determining federal-court jurisdiction. . . . [However,] [t]here could be no doubt, after *Bouligny*, that at least common-law entities (and likely all entities beyond the Puerto Rican sociedad en comandita) would be treated for purposes of the diversity statute pursuant to what *Russell* called "[t]he tradition of the common law," which is "to treat as legal persons only incorporated groups and to assimilate all others to

(continued...)

11

the Supreme Court has consistently applied the *Chapman* rule, holding that a partnership is not a citizen, but that the court "must look in the case of a suit by or against a partnership association to the citizenship of the several persons composing such association." *Great S. Fire Proof Hotel*, 177 U.S. at 456; *see also Carden*, 493 U.S. at 189; *Bouligny*, 382 U.S. at 151.

Further, in the context of partnerships, the complete diversity requirement demands that all partners be diverse from all parties on the opposing side. *See Lincoln Prop. Co.*, 546 U.S. at 84 n.1; *accord Carden*, 494 U.S. at 195 (accepting the "rule that the Court will . . . count every member of an unincorporated association for purposes of diversity jurisdiction" and "reject[ing] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the

---

[2](...continued)
   partnerships."
494 U.S. at 189–90.

court may consult the citizenship of less than all of the entity's members"); *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1259 (3d Cir. 1977) ("When the rule of complete diversity is read in conjunction with the principle that the citizenship of a partnership depends upon that of its members, it becomes clear that diversity jurisdiction may not obtain here, unless all of the members of the plaintiff partnership are of distinct citizenship from all of the defendants."); *Underwood v. Maloney*, 256 F.2d 334, 338 (3d Cir. 1958) ("[W]here jurisdiction is sought to be founded on diversity of citizenship, the action being by or against an unincorporated association . . . the citizenship of the individual members must be shown to be wholly diverse from that of the opposing party or those of the opposing parties."); *cf. Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806) ("[W]here the interest is joint, each of the persons concerned in that interest

13

must be competent to sue, or liable to be sued in [the federal] courts.").

Partnerships which have American partners living abroad pose a special problem. "In order to be a citizen of a State within the meaning of the diversity statute, a natural   person must be both a citizen of the United States and be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1988). An American citizen domiciled abroad, while being a citizen of the United States is, of course, not domiciled in a particular state, and therefore such a person is "stateless" for purposes of diversity jurisdiction. *See id*. Thus, American citizens living abroad cannot be sued (or sue) in federal court based on diversity jurisdiction as they are neither "citizens of a State," *see* 28 U.S.C. § 1332(a)(1), nor "citizens or subjects of a foreign state," *see id.* § 1332(a)(2). *See Newman-Green*, 490 U.S. at 826.

14

Putting these principles together, that is, that the citizenship of the individual partners must be shown to be wholly diverse from that of the opposing party (or those of the opposing parties) and that American citizens living abroad cannot sue (or be sued) in federal court based on diversity jurisdiction, our sister circuits and other federal courts have concluded that if a partnership has among its partners any American citizen who is domiciled abroad, the partnership cannot sue (or be sued) in federal court based upon diversity jurisdiction. *See Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001); *accord ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) ("One of [the partnership's] partners is a U.S. citizen domiciled in Canada; she has no state citizenship, so the diversity jurisdiction is unavailable."); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69 (2d Cir. 1990) ("If in fact any of S & C's foreign-residing

15

United States citizen partners are domiciled abroad, a diversity suit could not be brought against them individually; in that circumstance, since for diversity purposes a partnership is deemed to take on the citizenship of each of its partners, a suit against S & C could not be premised on diversity." (internal citations omitted)); *see also* 15 *Moore's Federal Practice* § 102.37[16] ("If a member of a partnership is a United States citizen permanently living abroad, there can be no diversity of jurisdiction because the member is neither a citizen of a state nor a citizen of a foreign country.").

Swiger, however, asks us to disregard these cases and create an exception to the *Chapman* tradition. He argues that we should ignore Lubar's lack of state citizenship and focus only on the partners who are citizens of a state. Morgan Lewis has American partners domiciled in, among other states, Pennsylvania, New York, and California; therefore, Morgan

Lewis, according to Swiger, is a citizen of Pennsylvania, New York, California, and so on. Although Morgan Lewis has a stateless partner, Swiger contends that the partnership can hardly be characterized as "stateless"; indeed, under this view, Morgan Lewis is quite "stateful." That is, according to Swiger, one party, Morgan Lewis, is a citizen of Pennsylvania, New York, and California, and so on, and the other party, Swiger, is a citizen of West Virginia, ipso facto, the parties are "citizens of different States."

We cannot agree. First, the Supreme Court has explicitly held, and consistently stated, as we have already noted, that a partnership is not a "citizen" for purpose of diversity jurisdiction. Instead, for purposes of diversity jurisdiction, a partnership's citizenship as a party is determined by reference to *all* partners, and *all* partners must be diverse from *all* parties on

17

the opposing side.[3] *Lincoln Prop. Co.*, 546 U.S. at 84 n.1; *see also Carden*, 494 U.S. at 195 ("[W]e reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members."). Second, Morgan Lewis, as an entity, is just as "stateless" as it is "stateful": Morgan Lewis is not an American citizen, and it "has no domicile in any state."

---

[3] Despite this, Swiger contends that the Supreme Court's recent decision in *Grupo Dataflux v. Atlas Global Group, L.P.*, supports his view that the partnership takes on the state citizenship of its partners. *See* 541 U.S. 567, 569 (2004) ("[A]s a partnership, [it] is a citizen of each State or foreign country of which any of its partners is a citizen."). *Grupo Dataflux*, however, does not change the basic principles as to how an unincorporated association's citizenship is determined for purposes of diversity jurisdiction. Indeed, in a post-*Grupo Dataflux* opinion, the Supreme Court again reiterated that "for diversity purposes, a partnership entity, unlike a corporation, does not rank as a citizen; to meet the complete diversity requirement, all partners, limited as well as general, must be diverse from all parties on the opposing side." *Lincoln Prop. Co.*, 546 U.S. at 84 n.1 (citing *Carden*, 494 U.S. at 189, 192–97).

18

But rather than treating partnerships as stateless, the *Chapman* rule determines the partnership's citizenship for purposes of diversity by referring to the citizenship of each partner. The rule of *Chapman* is a legal construct that allows a real legal entity, though a non-citizen, to sue and be sued in federal court based upon diversity by looking through the partnership to the citizenship of each partner.

Because Morgan Lewis has a stateless partner, and thus, all partners of Morgan Lewis are not diverse from all parties on the opposing side, the district court correctly held that it lacked diversity jurisdiction over this action.

B.      *Alienage Jurisdiction*

Swiger argues that even if jurisdiction based on diversity of state citizenship is lacking, the district court nevertheless had diversity jurisdiction under 28 U.S.C. § 1332(a)(2), because Lubar, as a dual citizen of the United States and the United

19

Kingdom would still be a "citizen[] or subject[] of a foreign state," and as such, Lubar would be diverse from Swiger within the meaning of § 1332(a)(2). That is, complete diversity would exist because Swiger is a citizen of West Virginia and Lubar is a citizen of the United Kingdom. After this appeal was briefed, but before oral argument, we decided this question in *Frett-Smith*, in which we held "that for purposes of diversity jurisdiction, only the American nationality of a dual national is recognized." *See Frett-Smith*, 511 F.3d at 400. Because Lubar is a United States citizen, any reliance on § 1332(a)(2)'s alienage jurisdiction would be in error. *Id.* at 400. Thus, "[o]nly if [Lubar] was domiciled in a particular state of the United States at the time the suit was filed, and that state was diverse from that of [Swiger], would subject matter jurisdiction be present" as against Morgan Lewis. *Id.*

## IV. CONCLUSION

20

Whenever a partnership (or other unincorporated association) brings suit or is sued in a federal court, the citizenship of each of its partners (or members) must be considered in determining whether diversity jurisdiction exists, and all partners (or members) must be diverse from all parties on the opposing side. Lubar, a Morgan Lewis partner and American citizen domiciled abroad, is "stateless" for purposes of diversity jurisdiction. Because Lubar, as a stateless person, cannot sue or be sued in federal court based upon diversity jurisdiction, neither can Morgan Lewis. The judgment of the district court is **AFFIRMED.**

McKee, *Circuit Judge*, concurring in the judgment.

I agree that the authority relied upon by my colleagues strongly suggests the analysis the lead opinion has adopted and the result my colleagues have reached. I am therefore reluctant

21

to disagree with that conclusion even though I do not think that the result we reach today is necessarily compelled by precedent of this court or the Supreme Court. I am, in fact, concerned that our decision today unnecessarily extends two conventions of diversity jurisprudence and thereby inappropriately circumscribes that jurisdiction. I think my colleagues would agree that it would be more logical to treat "stateless" partners in situations like this as "jurisdictional zeroes," rather than as citizens of the plaintiff's state; but we are not writing on a blank slate.

I realize, of course, that it is not the province of this or any other lower court to undermine the *Carden* rule or the "stateless person" doctrine discussed in the lead opinion. Nevertheless, applying the *Carden* rule and "stateless person" doctrine here results in a ruling that is inconsistent with both reality and common sense. Accordingly, although I concur in

22

the result, I hope that Congress will one day see fit to clarify that our diversity jurisdiction does extend to this situation.

## I.

Article III of the Constitution provides, in pertinent part, that "[t]he judicial Power shall extend to . . . Controversies . . . between Citizens of different States." In its current form, the diversity statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a). In *Chapman v. Barney*, 129 U.S. 677 (1889), the Supreme Court established that the "citizenship" of an unincorporated association (such as a partnership) is defined by the citizenship of its individual members. Unincorporated associations are thus treated differently than corporations which, under a 1958 amendment to the diversity statute, are considered to be citizens of their state

23

of incorporation and of their primary places of business.[1]  *See* 28 U.S.C. 1332(c)(1).

The Supreme Court has recognized that the disparate treatment of partnerships and corporations may not conform with modern business realities, but the Court has rejected invitations to reinterpret the rule.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 196-97 (1990), *reaffirmed in Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 578 n.6 (2004) ("Whether the Constitution requires it or not, *Carden* is

---

[1] Even before the diversity statute was amended, the Supreme Court had judicially devised the  rule that a corporation would be treated as a citizen of its state of incorporation. *See Louisville, C. & C.R. Co. v. Letson*, 43 U.S. (2 How.) 497 (1844).  The 1958 amendment, adding the principal place of business to the corporation's citizenship, was designed to prevent misuse of the diversity jurisdiction by corporations. *See* 15 Moore's Federal Practice § 102.50 (3d ed. 2008).  A corporation, treated as out-of-state because incorporated elsewhere, was unlikely to suffer local prejudice in the courts of the state where the corporation had its principal place of business. *Id.*

the subconstitutional rule by which we determine the citizenship of a partnership - and in this case it leads to the conclusion that there were *no* opposing parties who were not co-citizens.") (emphasis in original). Indeed, in *Carden*, the Court stated that this rule "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization." 494 U.S. at 196. Yet, the Court viewed the 1958 amendment to 28 U.S.C. § 1332(c) as evidence of Congress' tacit approval of the rule regarding citizenship of associations, as "[n]o provision was made for the treatment of artificial entities other than corporations." *Id*. at 196-97. The Court concluded that the limited scope of the amendment meant that Congress was content with the existing method of determining the citizenship of unincorporated associations such as partnerships. Accordingly, the Court declared that any change to the *Carden*

25

rule must come from Congress, as "[s]uch accommodation is not only performed more legitimately by Congress than by courts, but it is performed more intelligently by legislation than by interpretation of the statutory word 'citizen.'" *Id.*[2]

Nevertheless, despite its apparent relevance to this jurisdictional dispute, *Carden* does not definitively answer the specific question here. In *Carden*, an Arizona limited partnership brought a diversity action against two Louisiana citizens. *Id.* at 186. The partnership asserted that complete diversity was satisfied because none of its *general* partners shared the same citizenship as any adverse party. The citizenship of its *limited* partners, it argued, was irrelevant to the

---

[2] The Court further explained that this course "does not so much disregard the policy of accommodating our diversity jurisdiction to the changing realities of commercial organization, as it honors the more important policy of leaving that to the people's elected representatives." *Carden*, 494 U.S. at 197.

presence of diversity jurisdiction. *Id.* at 192. The Court rejected that position and held that complete diversity was lacking because one of the limited partners was, like the defendants, a citizen of Louisiana, thus precluding complete diversity. The Court held that the citizenship of partnerships is determined by the citizenship of *all* of its partners, not just the general partners. *Id.* at 195-96.

The Court addressed the application of diversity jurisdiction to partnerships again in *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). There, a Texas-based limited partnership brought a breach of contract action against a Mexican corporation based on the alienage clause of the diversity statute. As explained by the Supreme Court:

> Because [the partnership] had two partners who were Mexican citizens at the time of filing, the partnership was a Mexican citizen. (It was also a citizen of Delaware and Texas based on the citizenship of its other partners.) And because the

27

Defendant . . . was a Mexican corporation, aliens were on both sides of the case, and the requisite diversity was therefore absent.

*Id.* at 569. Therefore *Grupo Dataflux*, does not advance our inquiry much more than *Carden*. Neither case directly addresses the specific jurisdictional question before us. Rather, *Grupo Dataflux*, merely restates the principle that diversity jurisdiction (or alienage jurisdiction) does not obtain where a plaintiff and defendant share a common citizenship.

In contrast to *Carden* and *Grupo Dataflux*, no member of Morgan Lewis (nor any of the other defendants[3]) shares the citizenship of the plaintiff in this case. Swiger is a citizen of West Virginia. Morgan Lewis is a limited liability partnership

_____

[3] Defendants Allegheny Energy, Inc. and Allegheny Energy Service Corp. are Maryland corporations with their principal places of business in Greensburg, Pennsylvania. Defendant Allegheny Energy Supply Co. is a Delaware limited liability corporation with its principal place of business in Monroeville, Pennsylvania.

28

registered in Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. In addition to its stateless partner, Lubar, Morgan Lewis has partners who are citizens of Pennsylvania, New York and California. It is undisputed that no Morgan Lewis partner is a citizen of West Virginia. Ideally, that should be the beginning and end of our jurisdictional inquiry.

## II.

The rule that a United States citizen permanently domiciled abroad may not sue or be sued on the basis of diversity of citizenship (sometimes called the "stateless person" doctrine) is a doctrine likely born of chance rather than design. It was recognized (without any particular discussion) by the Supreme Court in *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). The rule has evolved from judicial interpretation of the words of the diversity statute. Section 1332 applies only to suits between "citizens of different States" and

29

"citizens of a State and citizens of a foreign state." 28 U.S.C. 1332(a)(1)-(2). The capitalized "State" refers to U.S. states. Hence, a U.S. citizen with no "State" citizenship falls outside the literal terms of the statute. This was likely not an intentional omission from diversity jurisdiction, but rather flowed from the (now incorrect) assumption that all U.S. citizens would also be domiciled in a U.S. state. *See* 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3621 (2008). *See also Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 415-16 (3d Cir. 1999) (noting likelihood that problem of "stateless" person - in the international sense - was unanticipated by the Framers).

At this point, neither the rule nor the cases that have applied it are open to judicial revision unless the Supreme Court

revisits the issue.[4]   However, the presence of a "stateless" partner in a partnership whose partners' citizenship is otherwise completely diverse from all plaintiffs should not summarily defeat the exercise of our jurisdiction.   After all, it is the partnership, not the individual partners, who are party to the action.

## III.

It is certainly not our job to create law.  We are, however, charged with filling gaps in statutes when unforeseen circumstances create ambiguities. For example, Congress has declared that a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). However, that statute does not determine if a court has

---

[4] Given its statements in *Carden*, it is not likely to do so unless Congress once again amends § 1332.

31

jurisdiction when a U.S. corporation has its principal place of business outside of the United States, or has no principal place of business at all. When presented with this situation, courts have not concluded that such a corporation is "stateless" and thereby beyond the reach of diversity jurisdiction. Rather, courts have held that the citizenship of the corporation defaults to the only state citizenship that can be determined - that of the state of incorporation. *See, e.g., Torres v. Southern Peru Copper Corp.,* 113 F.3d 540, 543-44 (5th Cir. 1997); *Cabalcetta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).

Likewise, if partners in a partnership are citizens of several states, but one (or more) partner is not a citizen of any state, there is no reason to necessarily conclude that subject matter jurisdiction is defeated. Thus, were we free to address the issue of Lubar's citizenship on a clean slate, I hope that we would readily concede that it adds nothing to the diversity

32

equation and that there is no reason to allow it to defeat diversity jurisdiction. Lubar's residence in England makes him a jurisdictional nullity, and his citizenship should be treated that way for purposes of determining subject matter jurisdiction. *Carden* and *Grupo Datflux* are not necessarily to the contrary. They merely hold that it is the *citizenship* of all the members of a partnership that must be examined, they say nothing about the *lack* of a partner's citizenship.

## IV.

The traditional explanation of the purpose of diversity jurisdiction is "the fear that state courts would be prejudiced against out-of-state litigants." *See* 13B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 3601 (2008). Morgan Lewis is a nationally prominent law firm whose main office is in Philadelphia, Pennsylvania. It is certainly not unreasonable to believe that local bias might operate in state

33

court in favor of a litigant that is as prominent and influential in the local community as Morgan Lewis.[5] That is the rationale for allowing Swiger to sue in federal court - assuming complete diversity. The rationale is not undermined one iota merely because one of Morgan Lewis' many hundreds of partners has been residing in England and will apparently continue to reside there indefinitely. So long as none of Morgan Lewis' partners is a citizen of Swiger's home state of West Virginia, the purpose of diversity jurisdiction is fully served, and Swiger should be permitted to test the merits of his claim in a federal forum. Lubar's lack of citizenship in any state should not be the jurisdictional equivalent of citizenship in the same state as Swiger. Accordingly, we should be able to conclude that this

---

[5] I do not, of course, suggest the accuracy or wisdom of perpetuating that long-standing assumption, but its historical role in the evolution of our subject matter jurisdiction can not be ignored.

suit presents "two adverse parties [who] are not co-citizens." *Grupo Dataflux*, 541 U.S. at 579 (internal quotation omitted).

## V.

According to one 2004 survey, roughly 10,000 of the 110,000 lawyers at the top 250 U.S. firms work overseas. Michael D. Goldhaber & Carlyn Kolker, *Supersonic Lawyers*, American Lawyer (May 2004). As business ventures and legal relationships become more global in depth and breadth, the situation we face today will become increasingly common. When the expanding business universe and shrinking globe are considered along with the growing population of expatriates and the apparently increasing popularity of non-corporate business forms, courts will no doubt be confronted with applying the *Carden* rule and the "stateless" person doctrine in this context with increasing regularity. Unless Congress takes up the problem and clarifies the meaning of 28 U.S.C. § 1332(a),

35

persons suing large partnerships will increasingly be barred from bringing their claim in federal court. Hopefully, Congress will address this situation and put the *Carden* genie back in its jurisdictional bottle. However, that day is not yet here, and I therefore concur in this judgment.