**Joseph B. KOVAL, Appellant**

v.

**WASHINGTON COUNTY REDEVELOPMENT AUTHORITY.**

No. 08–2492.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a), May 19, 2009.

Opinion Filed July 23, 2009.

---

Peter M. Suwak, Washington, PA, Attorney for Appellant

John M. Giunta, Cipriani & Werner, Pittsburgh, PA, Attorney for Appellee.

Before: FUENTES, JORDAN, and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellant Joseph Koval contends that his former employer, the Washington County Redevelopment Authority ("WCRA"), arbitrarily revoked his retirement health plan in violation of Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. The District Court dismissed Koval's suit for lack of subject matter jurisdiction, finding that the WCRA plan was subject to ERISA's exemption for "governmental plans." 29 U.S.C. § 1003(b)(1). For the reasons set out below, we affirm the judgment of the District Court.

## I.

Joseph Koval is a former employee of the WCRA. He retired in 2005 after having worked there for fifteen years. The WCRA's retirement health plan, a Blue Cross/Blue Shield plan, had been revoked in 2003. While it was reinstated as to most employees in 2004, Koval was denied reinstatement. He subsequently sued the WCRA in the Western District of Pennsylvania, alleging that its revocation of his health plan violated ERISA. He also brought state law contract and quasi-contract claims.

The WCRA moved to dismiss the suit under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, arguing that its benefit plan was a "governmental plan," exempted from ERISA by 29 U.S.C. § 1003(b)(1). ERISA defines a governmental plan as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by an agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). The District Court granted the motion to dismiss.

As the District Court noted in its decision, ERISA does not define a "political subdivision," "agency," or "instrumentality" under § 1002(32), nor have we addressed the meaning of those terms. Therefore, the District Court turned to two tests that have been used by other circuits, and applied by district courts in our Circuit, to determine whether an entity is a political subdivision for ERISA purposes.

The Second and Seventh Circuits have adopted the *NLRB* test, formulated by the Supreme Court in *National Labor Relations Board v. Natural Gas Utility District of Hawkins County, Tenn.*, 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971), to determine what constitutes a "political subdivision" exempt from the NLRB's jurisdiction under the National Labor Relations Act. *Id.* at 604–05, 91 S.Ct. 1746; *see Shannon v. Shannon*, 965 F.2d 542 (7th Cir.1992); *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910 (2d Cir.1987). The *NLRB* test looks at whether an entity is "created directly by the state, so as to constitute departments or administrative arms of the government," or "administered by individuals who are responsible to public officials or to the general electorate." 402 U.S. at 604–05, 91 S.Ct. 1746. In *Rose*, the Second Circuit adopted this

analysis, explaining that "[t]he NLRB guidelines are a useful aid in interpreting ERISA's governmental exemption, because ERISA, like the National Labor Relations Act, 'represents an effort to strike an appropriate balance between the interests of employers and labor organizations.'" 828 F.2d at 916 (citation omitted). The Seventh Circuit adopted the *NLRB* approach for similar reasons in *Shannon*, 965 F.2d at 547–48.

Meanwhile, the D.C. Circuit has applied an "employer-relationship" test as laid out in *Alley v. Resolution Trust Corp.*, 984 F.2d 1201 (D.C.Cir.1993). That methodology, used in *Alley* to determine whether a federally chartered savings and loan association constituted a government entity, focuses on whether the entity relates to its employees as a private business would or treats them as government workers. *Id.* at 1206 (finding entity not to be governmental given that its employees "were outside the civil service system, and were not subject to personnel rules or restrictions on salaries and benefits imposed generally on federal employees"). The D.C. Circuit explained its approach as rooted in the:

> background assumption underlying the governmental plan exemption ... that public employees exempted from ERISA were in fact covered by some distinctively "public" employment benefit scheme.... We find no indication that Congress meant the governmental plan exemption to reach an entity that relates to its employees as would a private business—an entity whose employees are not subject to laws governing public employees generally.

*Id.* (citations omitted).

The District Court in this case chose to apply the *NLRB* test, distinguishing the employer-relationship test from *Alley* as inapposite because that case dealt with a potential federal rather than state govern-

ment entity. The Court then determined that the WCRA was a political subdivision in that it had been created by a state statute for " 'public uses for which public money may be spent and private property may be acquired by the exercise of the power of eminent domain,' " and the statute defined a "Redevelopment Authority" as "a public body," " 'exercising public powers of the Commonwealth as an agency thereof.' " *Koval v. WCRA,* No. 07–cv–1432, 2008 WL 1773871, at \*5 (W.D.Pa. Apr. 16, 2008) (quoting 35 Pa. Cons.Stat. Ann. §§ 1702, 1703, 1709). The Court therefore dismissed the ERISA claim for lack of subject matter jurisdiction and consequently found that no supplemental jurisdiction existed over the state law claims.

Koval timely appealed, arguing that under either the NLRB test or the Alley test, WCRA is ineligible for ERISA's "governmental plan" exception because it was not created as a government entity and because it does not offer its employees the opportunity to participate in a state pension plan.

## II.

The District Court had jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(1)(B), and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Swiger v. Allegheny Energy, Inc.,* 540 F.3d 179, 180 (3d Cir.2008).

## III.

### A.

■ Our first task is to decide what analysis we should use in order to determine whether the benefit plan offered by the WCRA was a "governmental plan" exempt from ERISA. The district courts of this circuit have applied both the *NLRB* and *Alley* analyses in making such determinations. *See, e.g., Perazzo v. Reliance Standard Life Ins. Co.,* No. 00–3342, 2001 WL 1468287 (E.D.Pa. Nov. 15, 2001) (relying on *NLRB*); *Zarilla v. Reading Area Cmty. Coll.,* No. 99–1057, 1999 WL 554609 (E.D.Pa. June 30, 1999) (following *Alley*). We hereby endorse the *NLRB* test as the appropriate analysis to apply in determining whether a state-affiliated entity is a "political subdivision" of the state for purposes of 29 U.S.C. § 1002(32). *Cf. Shannon v. Shannon,* 965 F.2d 542 (7th Cir. 1992) (adopting *NLRB* test in applying § 1002(32)); *Rose v. Long Island Railroad Pension Plan,* 828 F.2d 910 (2d Cir.1987) (same).[1]

*Alley* itself suggests this result. In declining to apply *Rose*'s approach to the federal entity at issue in that case, the D.C. Circuit noted that "[c]oncern about protecting state authority over relations with state employees was one reason for the governmental plan exemption . . .; a *Rose*-style test focusing broadly on the extent of governmental contacts may be more appropriate where state-affiliated entities are concerned." 984 F.2d 1201, 1205 n. 11 (D.C.Cir.1993); *see also Gualandi v.*

---

**1.** In applying the *NLRB* test in this context, the Second and Seventh Circuits have taken slightly different approaches. The Second Circuit used the *NLRB* test in Rose only to determine whether an entity was a "political subdivision," utilizing yet a third approach—a six-factor analysis formulated by the Internal Revenue Service to determine whether a plan was a "governmental plan" under ERISA for purposes of certain tax consequences—to determine whether the entity was an "agency" or "instrumentality" under § 1002(32). Rose, 828 F.2d at 916–18. The Seventh Circuit in *Shannon*, on the other hand, used the two-prong *NLRB* analysis to decide if a hospital was either a "political subdivision," "agency," or "instrumentality" of the state. 965 F.2d at 548.

*Adams,* 385 F.3d 236, 242–43 (2d Cir.2004); *Hightower v. Tex. Hosp. Ass'n,* 65 F.3d 443, 448 (5th Cir.1995) (discussing legislative history indicating governmental plan exception was in part meant to preserve state and local self-determination); *Rose,* 828 F.2d at 914 (highlighting federalism concerns underlying governmental plan provision). The D.C. Circuit's caveat as to the applicability of *Alley* to state benefit plans recognizes that Congress deliberately gave state and local governments a wide berth in enacting ERISA, with the House Education and Labor Committee stating in its report:

> The Committee is convinced that legislation seeking reform in the public sector must proceed with a thorough study of the effects of such proposals. There are literally thousands of public employee retirement systems operated by towns, counties, authorities and cities in addition to the state and Federal plans. Eligibility, vesting, and funding provisions are at least as diverse as those in the private sector with the added uniqueness added by the legislative process. For this reason the Committee is convinced that additional data and study is necessary before any attempt is made to address the issues of vesting and funding with respect to public plans.

H.R.Rep. No. 93–533 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4647.

The *Alley* court therefore rightly noted its concern that the governmental plan analysis, when it arises in relation to a state entity, should focus on that entity's ties to state government rather than the details of how it treats its employees. Such an approach is reinforced by the language of ERISA itself, which defines a governmental plan as one that is "established or maintained" by a governmental entity, thus contradicting Koval's assertion that § 1002(32) does not apply here be-

cause the WCRA's employees do not participate in the state employee pension plan. 29 U.S.C. § 1002(32); *see also Roy v. Teachers Ins. & Annuity Ass'n,* 878 F.2d 47, 49 (2d Cir.1989) (holding that plan need not be maintained by a government entity to fit within § 1002(32)); *Silvera v. Mut. Life Ins. Co. of N.Y.,* 884 F.2d 423, 426–27 (9th Cir.1989) (similar).

While the *Alley* approach is not suited to cases involving state entities, the *NLRB* test is particularly appropriate to the ERISA context. As the Second Circuit explained in *Rose v. Long Island Railroad Pension Plan,* 828 F.2d 910 (2d Cir.1987), "[t]he NLRB guidelines are a useful aid in interpreting ERISA's governmental exemption, because ERISA, like the National Labor Relations Act, 'represents an effort to strike an appropriate balance between the interests of employers and labor organizations.'" *Id.* at 916 (quoting H.R.Rep. No. 93–533, 1974 U.S.C.C.A.N. at 4647). The *NLRB* approach has been utilized in other contexts to decide whether an entity is a political subdivision exempt from federal regulation. For example, in importing the *NLRB* test to determine if a Chicago-area zoological society was subject to the Occupational Safety and Health Act of 1970 ("OSH Act"), 29 U.S.C. § 652(5), the Seventh Circuit observed that the OSH Act's "immediate concern is with the employment relationship," and that its "political subdivision exemption represents an accommodation between the Act's general purpose of ensuring a safe workplace and the states' interest in preserving autonomy in their role as employers." *Brock v. Chi. Zoological Soc.,* 820 F.2d 909, 913 (7th Cir.1987).

Given ERISA's similar focus on labor and federalism issues, using the *NLRB* analysis to interpret its political subdivision exemption is likewise befitting here. *See also Shannon,* 965 F.2d at 547–48

(citing *Skills Dev. Servs. v. Donovan*, 728 F.2d 294, 299 & n.5 (6th Cir.1984) (applying NLRB test's two prongs in Tenth Amendment context because labor statutes' exemption for "political subdivisions" also rests on Tenth Amendment federalism concerns)); *Popkin v. N.Y. State Health & Mental Hygiene Facilities Improvement Corp.*, 547 F.2d 18, 20 (2d Cir.1976) (relying on *NLRB* test to interpret "political subdivision" exemption from Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*).

## B.

■ Applying the analysis laid out by the Supreme Court in the case that enunciated the *NLRB* test, *Hawkins County*, it is clear that the WCRA is a political subdivision of Pennsylvania under 29 U.S.C. § 1002(32) because it satisfies the first prong of that test—it was "created directly by the state, so as to constitute [a] department[ ] or administrative arm[ ] of the government." 402 U.S. at 604, 91 S.Ct. 1746. The Pennsylvania Urban Redevelopment Law ("URL"), the WCRA's enabling statute, defines a "Redevelopment Authority" as "[a] public body and a body corporate and politic created and organized in accordance with the provisions of this act." 35 Pa. Cons.Stat. Ann. § 1703. Although Appellant points to the statement in the same statute that the Redevelopment Authority for a city or county "shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function," 35 Pa. Cons. Stat. Ann. § 1704(a), the URL simultaneously provides that while a Redevelopment Authority is not an instrumentality of any particular city or county it *is* "a public body, corporate and politic, exercising public powers of the Commonwealth *as an agency thereof*." *Id.* § 1709 (emphasis added); *cf. Crilly v. Se. Pa. Transp. Auth.* ("*SEPTA*"), 529 F.2d 1355, 1358 (3d Cir. 1976) (finding SEPTA to be a political

subdivision of Pennsylvania under the *NLRB* test because the state statute creating SEPTA described it as "an 'agency and instrumentality' of the Commonwealth [created] to 'exercise . . . public powers' ") (quoting 66 Pa. Stat. Ann. §§ 2001 *et seq.*).

Moreover, one other aspect of *Hawkins County* supports a conclusion that the WCRA in particular is a political subdivision of Pennsylvania. One of the factors noted by the Supreme Court in determining that the Tennessee natural gas utility district being considered was a political subdivision was the fact that the district was, by statute, granted the power of eminent domain. 402 U.S. at 606, 91 S.Ct. 1746. The URL likewise gives Redevelopment Authorities the authority "[t]o acquire by eminent domain any real property . . . for the public purposes set forth in this act. . . ." 35 Pa. Cons.Stat. Ann. § 1709(i). Similarly, *Hawkins County* cited the fact that the district was provided by statute with " 'all the powers necessary and requisite for the accomplishment of the purpose for which such district is created, capable of being delegated by the legislature.' " 402 U.S. at 606, 91 S.Ct. 1746 (quoting Tenn.Code Ann. § 6–2612). That provision is paralleled in the URL's statement that "[a]n Authority shall constitute a public body . . . exercising public powers of the Commonwealth as an agency thereof, which powers shall include all powers necessary or appropriate to carry out and effectuate the purposes and provision of this act." 35 Pa. Cons.Stat. Ann. § 1709. In both respects, the WCRA clearly has powers beyond those "of a private corporation." *Hawkins County*, 402 U.S. at 607, 91 S.Ct. 1746.

Koval asserts that the District Court's ruling was in error because the WCRA does not satisfy the second prong of the *NLRB* test, under which an entity is a

political subdivision if it is administered by individuals who are responsible to public officials or the general electorate. *Id.* at 605, 91 S.Ct. 1746. Members of a Redevelopment Authority are appointed by the relevant mayor or board of county commissioners, but according to Koval they are not subject to removal thereafter by public officials or the general populace. However, this issue is irrelevant; having found that the WCRA is a political subdivision under the first prong of the disjunctive *NLRB* test, our inquiry is over. The WCRA's benefit plan is a "governmental plan" exempt from ERISA under 29 U.S.C. § 1003(b)(1), and therefore the District Court correctly ruled that it did not have subject matter jurisdiction over Koval's claims.

## IV.

For the foregoing reasons, we will affirm the District Court's dismissal of Koval's complaint under Rule 12(b)(1).